

AO 106 (REV. 4/10) Affidavit for Search Warrant

**FILED**
9/16/2020
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

AUSA Barry Jonas, (312) 886-8027

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

### UNDER SEAL

In the Matter of the Search of:

The single-family home located at 27 Pletcher Dr., Yorkville, Illinois, further described in Attachment A

Case Number: **20M485**

## APPLICATION AND AFFIDAVIT FOR A SEARCH WARRANT

I, PETER M. SALOMON, a Special Agent of the United States Naval Criminal Investigative Service, request a search warrant and state under penalty of perjury that I have reason to believe that on the following property or premises:

### See Attachment A

located in the Northern District of Illinois, there is now concealed:

### See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is evidence, fruits, and instrumentalities.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Section 371; | conspiracy; |
| Title 18, United States Code, Section 641; and | theft of government property; and |
| Title 18, United States Code, Section 2314. | interstate transportation of stolen property |

The application is based on these facts:

### See Attached Affidavit,

Continued on the attached sheet.

_____
*Applicant's Signature*

PETER M. SALOMON, Special Agent
United States Naval Criminal Investigative Service
*Printed name and title*

Pursuant to Fed. R. Crim. P. 4.1, this Application is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the statements in the Application and Affidavit by telephone.

Date: September 16, 2020

_____
*Judge's signature*

City and State: Chicago, Illinois

HEATHER K. McSHAIN, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT     )
                                   )
NORTHERN DISTRICT OF ILLINOIS     )

## **AFFIDAVIT**

I, PETER M. SALOMON, being duly sworn, state as follows:

1.     I am a Special Agent with the United States Naval Criminal Investigative Service (NCIS).

2.     I have been a Special Agent with NCIS since January 2019, and am currently assigned to Resident Agency Cherry Point, NC. I was previously retained as a contractor by the United States Office of Personnel Management from 2016-2018 as an Investigator. I graduated from Mount St. Mary's University with a Bachelor's of Science in Business. I am a graduate of the Criminal Investigator Training Program (CITP) and the NCIS Special Agent Basic Training Program located at the Federal Law Enforcement Training Center in Glynco, GA. Since graduation from CITP, I have worked a variety of criminal investigations. Through training and experience, I have become familiar with methods and schemes employed by government property dealers to obtain and distribute stolen government property. I have received organized and on-the-job training in multiple disciplines and investigative techniques utilized during criminal investigations. As part of the affiant's daily duties as a NCIS Special Agent, I investigate violations of the Uniform Code of Military Justice and Federal Crimes, including violations of Title 18, United States Code, Sections 371, 641 and 2314.

3.     This affidavit is made in support of an application for a warrant to search the single-family home located at 27 Pletcher Dr., Yorkville, Illinois, described further in Attachment A (the "**Subject Premises**"), for evidence, fruits, and instrumentalities described further in Attachment B, concerning conspiracy in violation of Title 18, United States Code, Section 371; theft of government property, in violation of Title 18, United States Code, Section 641; and interstate transportation of stolen property, in violation of Title 18, United States Code, Section 2314 (the **Subject Offenses**).

4.     The statements in this affidavit are based on my personal knowledge, and on information I have received from other law enforcement personnel and from persons with knowledge regarding relevant facts. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth facts that I believe are sufficient to establish probable cause to believe that evidence, fruits, and instrumentalities of violations of the **Subject Offenses** are located at the **Subject Premises**.

## I.     FACTS SUPPORTING PROBABLE CAUSE TO SEARCH

### Summary

5.     As discussed in detail below, there is probable cause to believe Rafael Montalvo used the **Subject Premises** as part of a multi-state, multi-year conspiracy to steal property belonging to the U.S. Government from military bases, namely

2

avionics testing equipment, and ship it interstate for sale. From approximately 2015 to the present, bank records, shipping records, phone records, emails, and texts demonstrate Montalvo, acting in concert with others, has stolen or caused to be stolen numerous pieces of equipment from Marine Aviation Squadrons on multiple military installations belonging to the United States Marine Corps. Montalvo, and other members of the conspiracy at his direction, then ship the stolen items interstate to buyers, and receive and distribute payment for those items among those who assisted in the theft and shipment. As described in more detail below, some of the stolen items appear to have been shipped to or shipped from the **Subject Premises**.

6.     The facts noted below in this affidavit are derived from the following sources: my own conversations with Witnesses A, B, C, D, Marine Aviation Logistics Squadron (MALS) -14 Command, and MALS-11 Command pertaining to the purchase and sale of government property; my own review of documentation provided by FedEx, AT&T, Verizon Wireless, Wells Fargo, Yahoo, Inc, and independent investigation by the investigative team including, but not limited to, a review of government records available to law enforcement.

<u>Sales to Witness A and Witness B</u>

7.     On October 7, 2019, NCIS Resident Agency Cherry Point, North Carolina was notified regarding the theft of US Government property from MALS-14, which has as a primary responsibility to service aircraft engines and aircraft components. The item reported stolen was a signal generator with an estimated

3

monetary value of approximately $70,015. The missing signal generator bore part number (PN) E8257D and serial number (SN) SG53400321. A signal generator is an electronic device which generates electronic signals and is used to design, manufacture, service, and repair electrical components. After the initial report of the missing signal generator, an inventory was conducted of the MALS-14 calibration lab, which revealed an oscilloscope, oscilloscope calibrator, and active heads were also missing and believed stolen from MALS-14. These additional items were valued at over $50,000.

8.      In January 2020, the missing oscilloscope calibrator was located on ebay.com through a cursory search. The oscilloscope calibrator was confirmed to be the item missing from MALS-14 by comparing the part number and serial number to the eBay listing photographs. Witness A, the owner of Company A, was contacted pertaining to this oscilloscope calibrator listing. Witness A stated he purchased the item directly from Witness B who is located in Mountain View, California. Witness A stated he had been purchasing items from Witness B for several years and Witness B was one of his trusted wholesalers.

9.      I made telephonic contact with Witness B pertaining to the origin of the oscilloscope calibrator he previously sold to Witness A. Witness B told me he purchased the oscilloscope calibrator from Rafael Montalvo. Database checks revealed Montalvo is currently an Illinois State Trooper and a current member of the Illinois Army National Guard. Montalvo was formerly a Marine stationed aboard

4

Marine Corps Air Station (MCAS) Cherry Point, NC from February 24, 2015, until September 8, 2017. There, Montalvo worked in MALS-14 and had access to electronic test equipment and avionics equipment.

10.    Witness B sent me various emails, which contained screenshots of iMessage threads between him and Montalvo. The threads contained negotiations via iMessage during October 5, 2019, and October 6, 2019 for the sale of a signal generator, oscilloscope, oscilloscope calibrator, active heads, and various additional items. In the iMessage threads, Montalvo stated the items were in good condition and came directly from a calibration lab. Montalvo used cell phone number 760-805-5387 to send iMessages to Witness B and Witness B used cell phone number XX-XXX-4242 in the above iMessage chain. Phone records confirmed the above phone numbers belonged to Montalvo and Witness B.

11.    Witness B told me he received a FedEx box containing the items at his apartment address in Mountain View, CA. Witness B had taken a photo of the label on the shipment box because he found it odd Montalvo's name was listed as the recipient, at Witness B's apartment address. Witness B provided a photo of the label, which revealed the sender as "Marcus Brown" with a phone number of XXX-XXX-9008. Brown was identified as Cpl Marcus Brown, MALS-14, MCAS Cherry Point, NC.[1] Cpl Brown has been stationed at MCAS Cherry Point, NC from February 2017

---

[1]  Brown has been indicted by a grand jury in the Eastern District of North Carolina for violating the **Subject Charges**.

to present. Cpl Brown and Montalvo were both stationed at MCAS Cherry Point, NC together from February 2017 until September 2017.

12.     Montalvo and Cpl Brown both worked in the Marine Corps as Individual Material Readiness List (IMRL) Managers aboard MCAS Cherry Point, NC, within MALS-14. The IMRL Managers are responsible for inventory, calibration, and issuance of aviation support equipment, which is vital to daily aircraft maintenance and flight operations within the Marine Corps.

13.     At the request of the investigation, MALS-14 conducted an in depth squadron inventory beyond just that previously done for the calibration lab. The inventory revealed over 200 additional missing items with a value of over $3,000,000.

14.     Of these additional 200 items, MALS-14 was missing two Fluke 8508A Digital Multimeters with a total estimated value over $26,000. iMessage threads between Witness B and Montalvo revealed Montalvo negotiated with Witness B to sell two 8508A's, but the thread did not confirm a sale.

15.     Witness A stated he bought an oscilloscope, oscilloscope calibrator, and active heads in a single purchase from Witness B. The items were confirmed via part number and serial number to be the items missing from the MALS-14 Calibration Lab. Witness A provided he also bought two Fluke 8508A Digital Multimeter's from Witness B. One of the Fluke 8508A's purchased by Witness A from Witness B matched a part number and serial number missing from MALS-14. Witness A stated

6

he did not have the serial number of the second Fluke 8508A because he had sold the item.

### Sales to Witness C

16.     During an internet canvass, Witness C, the owner of Company C in Austin, Texas was identified as a seller of used military avionics equipment. I made contact with Witness C, and he informed me that he had previously bought items from Montalvo, whom he met through eBay. Witness C stated he had purchased approximately 30-45 items from Montalvo over the past few years. Witness C provided me with screenshots of text messages, photos, and emails of negotiations, offers and invoices for various purchases dating back to 2016. In one particular email, Montalvo stated he was emailing Witness C about transactions (rather than texting) because he did not have consistent access to his phone while in police training. Montalvo used various email accounts for correspondence with Witness C. Photos provided by Montalvo to Witness C in iMessage threads revealed various shipping labels from both UPS and FedEx. One UPS receipt showed the sender as Montalvo at the **Subject Premises**. Montalvo used the phone number 760-805-5387 to send iMessages to Witness C.

17.     Witness C confirmed he purchased a Swaged Terminal Pull Tester Kit bearing PN: AT520CTK and SN: C8172 from Montalvo. The Swaged Terminal Pull Tester Kit was confirmed by part number and serial number to be an asset missing from MALS-11, MCAS Miramar, California. MALS-11 is part of 3D Marine Aircraft

Wing, on the west coast of the United States. Other items purchased by Witness C from Montalvo correlate via transaction timeframe, purchase amount and item type to additional missing MALS-14 property. MALS-14 and MALS-11 conduct the same operations but for different Marine Aircraft Wings, and both MALS-11 and MALS-14 use similar parts and test equipment that have been confirmed missing.

18.     Review of emails provided by Witness C revealed that on June 2, 2016, Witness C received a PayPal invoice from Rafael Montalvo for $4,000 from the email account djphear2015@yahoo.com. On June 7, 2016, Witness C received a PayPal invoice from Rafael Montalvo for $4,300 from the email account djphear2015@yahoo.com. On May 26, 2019, Witness C received UPS shipment details from Rafael Montalvo with the seller email address showing as rmontalvo0001@yahoo.com. On August 11, 2019, Witness C received a PayPal invoice from Rafael Montalvo for $700 from an unknown email account. On July 4, 2017, Witness C received a money request from Rafael Montalvo for $500 from an unknown email account. On July 20, 2017, Witness C received a PayPal invoice from Rafael Montalvo for $1,400 from an unknown email account. On August 21, 2019, Montalvo, using the email account rafaelmontalvo@yahoo.com, emailed Witness C and stated he had a Permaswage in route to his house and he was selling it for $12,000. Per documentation provided by Wells Fargo, Montalvo's mailing address in August of 2019 was the **Subject Premises**.

8

Sales to Witness D

19.     Witness D is the owner of Company D located in Houston TX, and was identified as having made approximately 25 purchases totaling over $60,000 from Montalvo. Many of the items Montalvo sold to Witness D matched the description of missing government property. Information obtained from Witness D's Yahoo, Inc email account revealed on October 14, 2019, Montalvo offered to sell Witness D a signal generator. Montalvo sent Witness D multiple photographs of the signal generator, which revealed the unit Montalvo tried to sell bore PN E8257D and SN SG53400321. The part number and serial number of the unit matched the original signal generator missing from the MALS-14 calibration lab. The photographs were sent to Witness D from Montalvo's email address rafaelmontalvo@yahoo.com.

20.     FedEx records revealed Montalvo sent Witness C seven shipments using the **Subject Premises** as the return address. These shipments occurred between November 2018 and August 2019.  Montalvo sent Witness D three shipments using the **Subject Premises** as the return address. The shipments were sent between March 1, 2019 and April 16, 2019. Montalvo also received various shipments at the **Subject Premises** from Witness D (from July 2018 into October of 2018) and from a co-subject (from July 2018 until August 2019).

21.     According to open source records and records available to law enforcement agencies, the **Subject Premises** is owned by Montalvo's father, who is believed to still live there. On government background investigation records

9

completed in September of 2018, Montalvo listed the **Subject Premises** and only the Subject Premises as his home address for the period between August of 1989 and the date of his signature on the form (September 13, 2018). For a short time, Montalvo was stationed to work in District 14 as an Illinois State Trooper and, according to open source records, to include utility records, rental record and Montalvo's driver's license, he was also associated with the address 415 W. Adams St., Apt. 2, Macomb, IL 61455. However, the investigation revealed no use of that Macomb address in furtherance of the conduct described herein. Vehicles in Montalvo's name, to include a 2019 Ram 1500 Truck, with VIN: 1C6SRFJT8KN911006, have been registered to the **Subject Premises** since at least February 2018, and I could find no vehicles listed in Montalvo's name at the Macomb address. Moreover, his bank statements from Wells Fargo Bank and Frontwave Credit Union continued to use the **Subject Premises** throughout the applicable time. According to the Illinois State Police, Montalvo submitted a request to change his duty work station to District 5, which encompasses the county in which Yorkville is located, as well as a change of his address to the **Subject Premises**. The requests were approved in August 2020. The Macomb address was his prior address on file with the Illinois State Police. Surveillance undertaken September 15, 2020, indicated a State Police vehicle was in the driveway of the **Subject Premises** at 0400 hours.

22. As a result of my training and experience, and the training and experience of other law enforcement officers with whom I work and communicate on

10

a daily basis, I have learned that persons engaged in ongoing criminal conduct maintain items that are of evidentiary value to their criminal activities.

23.    In this case, the alleged criminal activity has generated photos, shipping records, bank records, emails, and text messages. In addition, it is likely there are inventories and/or ledgers, describing what equipment Montalvo is expecting, what may be on hand, that which he is expecting yet to receive payment for, and to whom he still owes payment. In addition, records commonly maintained in one's residence, to include on one's personal computers, include records/ledgers of payment for property, amounts and types of transactions, bank records, customer lists, lists and telephone numbers of sales associates, photographs and other documents that relate to the transportation and distribution of stolen property, and evidence of other proceeds and assets derived from the sale of stolen property.

24.    This case involves allegations of a continuing criminal activity, taking place over months and years. Though I would expect the product inventory to fluctuate over time, I know records associated with the transportation, sale, and various equipment associated with sale of stolen property, and the laundering of item sale proceeds as indicated in "Attachment A," would be maintained on a continuing basis.

## II. SPECIFICS REGARDING SEARCHES OF ELECTRONIC STORAGE MEDIA

21. Based upon my training and experience, and the training and experience of specially trained personnel whom I have consulted, searches of evidence from electronic storage media commonly require agents to download or copy information from the electronic storage media and their components, or remove most or all electronic storage media items (*e.g.* computer hardware, computer software, computer-related documentation, and cellular telephones) to be processed later by a qualified computer expert in a laboratory or other controlled environment. This is almost always true because of the following:

a. Electronic storage media can store the equivalent of thousands of pages of information. Especially when the user wants to conceal criminal evidence, he or she often stores it with deceptive file names. This requires searching authorities to examine all the stored data to determine whether it is included in the warrant. This sorting process can take days or weeks, depending on the volume of data stored, and it would be generally impossible to accomplish this kind of data search on site.

b. Searching electronic storage media for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert should analyze the system and its data. The search of an electronic storage media system is an exacting scientific procedure which is designed

12

to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files. Since electronic storage media evidence is extremely vulnerable to tampering or destruction (which may be caused by malicious code or normal activities of an operating system), the controlled environment of a laboratory is essential to its complete and accurate analysis.

22.     In order to fully retrieve data from a computer system, the analyst needs all storage media as well as the computer. The analyst needs all the system software (operating systems or interfaces, and hardware drivers) and any applications software which may have been used to create the data (whether stored on hard disk drives or on external media).

23.     In addition, electronic storage media such as a computer, its storage devices, peripherals, and Internet connection interface may be instrumentalities of the crime(s) and are subject to seizure as such if they contain instrumentalities or were used to carry out criminal activity.

## III.    PROCEDURES TO BE FOLLOWED IN SEARCHING ELECTRONIC STORAGE MEDIA

24.     Pursuant to Rule 41(e)(2)(B) of the Federal Rules of Criminal Procedure, this warrant will authorize the removal of electronic storage media and copying of electronically stored information found in the premises described in Attachment A so

that they may be reviewed in a secure environment for information consistent with the warrant.[2] That review shall be conducted pursuant to the following protocol.

25.     The review of electronically stored information and electronic storage media removed from the premises described in Attachment A may include the following techniques (the following is a non-exclusive list, and the government may use other procedures that, like those listed below, minimize the review of information not within the list of items to be seized as set forth herein):

a.     examination of all the data contained in such computer hardware, computer software, and/or memory storage devices to determine whether that data falls within the items to be seized as set forth in Attachment B;

b.     searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth in Attachment B (any data that is encrypted and unreadable will not be returned unless law enforcement personnel have determined that the data is not (1) an instrumentality of the offenses, (2) a fruit of the criminal activity, (3) instrumentalities, (4) otherwise unlawfully possessed, or (5) evidence of the offenses specified above);

---

[2] According to information recently received during the investigation, Montalvo recently obtained a new cellular telephone. The government will not seize or search any cellular telephone located at the **Subject Premises**.

        c.     surveying file directories and the individual files they contain to determine whether they include data falling within the list of items to be seized as set forth in Attachment B;

        d.     opening or reading portions of files, and performing key word searches of files, in order to determine whether their contents fall within the items to be seized as set forth in Attachment B.

26.    The government will return any electronic storage media removed from the premises described in Attachment A within 30 days of the removal unless, pursuant to Rule 41(c)(2) or (3) of the Federal Rules of Criminal Procedure, the removed electronic storage media contains instrumentalities or constitutes an instrumentality of crime, or unless otherwise ordered by the Court.

## IV.   CONCLUSION

27.    Based on the above information, I respectfully submit that there is probable cause to believe that conspiracy in violation of Title 18, United States Code, Section 371; theft of government property, in violation of Title 18, United States Code, Section 641; and interstate transportation of stolen property, in violation of Title 18, United States Code, Section 2314, have been committed, and that evidence, fruits, and instrumentalities relating to this criminal conduct, as further described in Attachment B, will be found in the Subject Premises, as further described in Attachment A. I therefore respectfully request that this Court issue a search warrant for the single-family home located at 27 Pletcher Dr., Yorkville, Illinois, more

particularly described in Attachment A, authorizing the seizure of the items described in Attachment B, pursuant to the protocol described in the addendum to Attachment B.

FURTHER AFFIANT SAYETH NOT.

PETER M. SALOMON
Special Agent
United States Naval Criminal
Investigative Service

Sworn to and affirmed by telephone 16th day of September, 2020

Honorable HEATHER K. McSHAIN
United States Magistrate Judge

16

## ATTACHMENT A

### DESCRIPTION OF PREMISES TO BE SEARCHED

The premises to be search (the "**Subject Premises**") is the residence located at 27 Pletcher Drive, Yorkville Illinois, 60560 which is a two-story single-family brick home. Pletcher Drive is a dead end road running North and South with a cross street of Plattville Road. The residence is the fourth house on the West side of the road. The house is a white residence with a gray roof and has an attached garage and large front porch. The mailbox was a light brown, wooden mailbox with a white placard containing the number, twenty-seven (27).

A photograph of the **Subject Premises** appears below. The **Subject Premises** includes any closed containers located at the **Subject Premises** (closed containers constituting electronic storage media will only be searched pursuant to the Addendum to Attachment B).



## ATTACHMENT B

## LIST OF ITEMS TO BE SEIZED

Evidence, fruits or instrumentalities concerning violations of Title 18, United States Code, Section 371; theft of government property, in violation of Title 18, United States Code, Section 641; and interstate transportation of stolen property, in violation of Title 18, United States Code, Section 2314 (the **Subject Offenses**), as follows:

1.      All electronic test equipment, measurement equipment, avionics equipment and other military-type equipment.

2.      Items related to the acquisition of stolen government property, or sale without authority of government property, including but not limited to inventory sheets, invoices, government-issued documents and materials, shipping containers or boxes, handwritten notes, notebooks, and personal address/telephone books.

3.      Items related to the ability to access and obtain government property, such as military-issued identification, key or access cards to government facilities, and letters granting permission to access government facilities.

4.      Items related to shipments through the United States Postal Service or other third-party interstate or international carriers, including but not limited to DHL, United Parcel Service and FedEx.

5.      Bank records, checks, credit card bills, account information, and other financial records, including records related to bank transactions, wire

transfers of funds, and other money transfers including but not limited to Venmo, Paypal, Western Union, MoneyGram, or other third-party fund-transfer centers, or prepaid or rechargeable debit and/or gift cards.

6.    Items related to business activity, to include: bank receipts, W-2 forms and other tax records, deposit slips, records of banking transactions, payroll records, business records and receipts, business license's, large sums of currency, and other papers and documents indicating financial transactions, records that document, record, and facilitate the sale of stolen government property; including but not limited to purchase and sales receipts, notes, faxes, invoices, bills, banking materials, telephone materials, maps, toll road receipts, electronic toll materials, mass transit bills or receipts, shipping records, and vehicle rental records.

7.    Items related to the ownership of assets, including but not limited to mortgage bills or payments, deeds, titles, and investment materials. All records that document coconspirators; including but not limited to photographs, home videos, and telephone number lists.

8.    Evidence of attribution, showing who used or owned the premises listed in Attachment A at the time the things described in this warrant were obtained and/or sold, such as: personal mail, checkbooks, personal identification, notes, other correspondence, utility bills, rent receipts, payment receipts, financial documents, keys, photographs (developed or undeveloped), leases, mortgage bills, and vehicle registration information or ownership warranties,

2

receipts for vehicle parts and repairs and telephone answering machine introductions and fingerprints.

9.    Records or other items which evidence ownership or use of computer equipment found in the **Subject Premises**, including, but not limited to, sales receipts, bills for Internet access, and handwritten notes.

10.    U.S. Currency or other monetary instruments (including but not limited to bonds, stocks, certificates of deposit) that may have been obtained with proceeds of the sale of stolen property.

11.    Items related to the identities and contact information of participants in or witnesses to the **Subject Offenses**.

## ADDENDUM TO ATTACHMENT B

Pursuant to Rule 41(e)(2)(B) of the Federal Rules of Criminal Procedure, this warrant authorizes the removal of electronic storage media and copying of electronically stored information found in the premises described in Attachment A so that they may be reviewed in a secure environment for information consistent with the warrant. That review shall be conducted pursuant to the following protocol:

The review of electronically stored information and electronic storage media removed from the premises described in Attachment A may include the following techniques (the following is a non-exclusive list, and the government may use other procedures that, like those listed below, minimize the review of information not within the list of items to be seized as set forth herein):

a. examination of all the data contained in such computer hardware, computer software, and/or memory storage devices to determine whether that data falls within the items to be seized as set forth in Attachment B;

b. searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth in Attachment B (any data that is encrypted and unreadable will not be returned unless law enforcement personnel have determined that the data is not (1) an instrumentality of the offenses, (2) a fruit of the criminal activity, (3) instrumentalities, (4) otherwise unlawfully possessed, or (5) evidence of the offenses specified above);

c. surveying file directories and the individual files they contain to determine whether they include data falling within the list of items to be seized as set forth in Attachment B; and

d. opening or reading portions of files, and performing key word searches of files, in order to determine whether their contents fall within the items to be seized as set forth in Attachment B.

The government will return any electronic storage media removed from the premises described in Attachment A within 30 days of the removal unless, pursuant to Rule 41(c)(2) or (3) of the Federal Rules of Criminal Procedure, the removed electronic storage media contains instrumentalities or constitutes an instrumentality of crime, or unless otherwise ordered by the Court.

AO 93 (Rev. 11/13) Search and Seizure Warrant

AUSA Barry Jonas, (312) 886-8027

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

### UNDER SEAL

In the Matter of the Search of:

Case Number: **20M485**

The single-family home located at 27 Pletcher Dr.,
Yorkville, Illinois, further described in Attachment A

## SEARCH AND SEIZURE WARRANT

To: PETER M. SALOMON and any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the Northern District of Illinois:

### See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal:

### See Attachment B

**YOU ARE HEREBY COMMANDED** to execute this warrant on or before September 29, 2020 in the daytime (6:00 a.m. to 10:00 p.m.).

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to the issuing United States Magistrate Judge.

Date and time issued: September 16, 2020   3:40 p.m.

_Heather K. McShain_
*Judge's signature*

City and State: Chicago, Illinois

HEATHER K. McSHAIN, U.S. Magistrate Judge
*Printed name and title*

AO 93 (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No: | Date and Time Warrant Executed: | Copy of Warrant and Inventory Left With: |
| Inventory made in the presence of: | | |
| Inventory of the property taken and name of any person(s) seized: | | |

## Certification

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*